(89 Misc. Rep. 712)

### In re BEARNS.

### In re BEARNS' WILL.

(Surrogate's Court, Kings County.　March, 1915.)

WILLS ⚙➡108—ADMISSION TO PROBATE—INSTRUMENT INCORPORATING EAR-
　LIER INSTRUMENT.

　　An alleged will, which recited that testator had earlier made his last
will and several codicils thereto, that he could not find them, that he had
not in any manner revoked them, that he included copies of such will
and codicils, and which closed with the following:　"Now, therefore, I
*　*　*　do hereby republish the said last will and testament and said
codicils thereto, and do hereby declare the same to be my last will and
testament and codicils thereto"—was entitled to probate, where testa-
tor's signature appeared at the end, and the usual attestation clause
was subjoined, signed by three witnesses.

　　[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 249–258; Dec.
Dig. ⚙➡108.]

In the matter of the petition of James S. Bearns to prove the last
will and testament of Joseph H. Bearns, deceased.　Probate decreed.

Rudolph F. Rabe, of New York City (John F. Clarke, of Brooklyn,
of counsel), for proponent.

John G. Snyder, of New York City (Percival H. Gregory, of New
York City, of counsel), for contestant.

William C. McKee, of New York City, for Brooklyn Bureau of
Charities, legatee.

Coombs & Whitney, of Brooklyn, for St. James Church, legatee.

Low, Miller & Low, of New York City, for St. Christopher's Hos-
pital for Babies, legatee.

Wood, Cooke & Seitz, of New York City, for Brooklyn Children's
Aid Society, legatee.

J. Mayhew Wainwright, of New York City, for American Society
for the Prevention of Cruelty to Animals, legatee.

Jacob I. Bergen, of New York City, special guardian, for Selina
Bearns, Melville H. Bearns, and Ruth Lillia Bearns, infants.

KETCHAM, S.　The only question presented is whether or not the
propounded paper is a will.　It opens with a recital by the decedent
that he has earlier made his last will and testament and several codicils
thereto; that he cannot find them; that he has not in any manner re-
voked them; and that the following are copies of the said last will
and testament and codicils.　Copies of the earlier instruments thus
identified are then incorporated at length.　The document then closes
with the following:

"Now, therefore, I, the said Joseph H. Bearns, do hereby re-publish the
said last will and testament and said codicils thereto, and do hereby declare
the same to be my last will and testament and codicils thereto."

The signature of the alleged testator is at the end of the paper, and
a clause of attestation is subjoined in these words:

"The foregoing instrument was signed, published and declared by Joseph
H. Bearns, the testator, as and for his last will and testament, and as and

for the codicils to his last will and testament in our presence, and thereupon we, at his request and in his presence and in the presence of each other signed our names as witnesses hereto."

At the end of the clause last quoted appear the names of three witnesses, with a statement of their residences, respectively.

From its face and the testimony of these witnesses it will be found that the instrument was subscribed, declared, and attested in the full form required for the execution of a will. That the signatory of this paper intended to make a will and believed that he was making one is manifest. Not only does this subjective intention appear, but any sane person will know from the terms of the paper just what it was that the supposed testator meant to accomplish by a will. Where both the fact of testamentary purpose and the explicit nature of the testamentary scheme are so plain that the wayfaring man, though a fool, need not err therein, it only remains to determine whether the law so far partakes of the wayfarer's affliction that it cannot see what everybody else can. In such case all the cunning of construction may be justly employed to infuse the language known to have been used in a testamentary endeavor with an interpretation which will give life and effect to a worthy purpose.

The supposed testator republishes his former will and codicils. This is not the kind of republication which the law has in mind when it provides that a will may be republished. This it could not be, for the transaction did not in any point conform to the legal requirements of republication, and it cannot be presumed that the decedent intended his act to be ineffectual.

Where a word under construction yields no force when limited to one definition, but would show forth a clear value if lighted up by another, it is at least permissible to inquire whether the more hopeful definition will apply, and clearly, if it then be found that in one meaning the word would endanger a solemn instrument which the other meaning would rescue, the interpretation must be adopted which will save, and not destroy. In the narrow sense to which the law confines the word, the mere act of making the former will and codicils was published at the time when they were made. But to publish is to declare, to tell, to display, to put in print or writing for the people to read. In this usage the substance of the former instruments formed a record and declaration of a complete scheme for the disposition of the decedent's estate intended to be read in the event of death.

Since, then, it is impossible to effectuate the supposed testator's republication as a transaction directed merely to his earlier acts of testation, the inquiry is forced as to whether he may not have meant, when he republished his will and codicils, that he repeated, confirmed, and adopted anew the provisions which they contained and made them the text and evidence of the scheme of a present will.

To republish, long before it was strained from its normal meaning to the narrower uses of the law, meant only to publish again, to repeat, to tell anew, to declare a second time. It sometimes means to reprint, as in the case of the reproduction of a written work, to print and utter a new edition.

There are only a few means, well defined, by which a man may so proceed that his act will constitute a republication of the factum of an earlier will. The transaction now under review contains no single feature which conformed to the ceremony of republication as legally defined. It did fit into and reproduced all the elements of a republication in either the popular, literary, or original meaning of the word.

When it is obvious that the supposed testator could not have used the language, "I do hereby republish my will which has been lost," with the intention of availing himself of the legal doctrine of republication, it becomes an urgent and welcome duty to adjust his words to any appropriate interpretation which will reveal what is known to have been in his mind, however obscured in misfit phrases. "The letter killeth, but the spirit maketh alive."

It is believed that a just construction of this will is that the testator, when he executed the propounded paper, incorporated therein as his will all the terms and directions contained in the earlier instruments. The instrument is found to be the last will and testament of the decedent, and as such is admitted to probate.

Probate decreed.